Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Melissa J. Levine
mlevine@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Supercell Oy*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUPERCELL OY, <br><br> *Plaintiff* <br><br> v. <br><br> BANDAI GUA GUA MODEL TOYS STORE, CHILDLIKE FIGURES STORE, CHILDREN GROWING TREE STORE, CHINA TOY HALL STORE, CHINESE GOOD STORE, CORN HUNTER GLOBAL TOY STORE, COZY PILLOW KINGDOM STORE, DONGGUAN DREAMER INDUSTRIAL CO., LTD., DONGGUAN RUIGAO PLASTIC PRODUCTS CO., LTD., HAPINQUAN STORE, JIA HAN TOYS STORE, JIANGSU FONDIN GUEST AMENITIES CO., LTD., JIAXING BIG BEAR TOYS CO., LTD., LUOLUO LNS STATIONERY STORE, MR BEAR3RD PLUSH STORE, NANNING MAGGIE TRADING CO., LTD., SHENZHEN HENGTAIHAO TECHNOLOGY CO., LTD., SHENZHEN JI MI TECHNOLOGY CO., LTD., SHENZHEN LANBOWAN TECHNOLOGY CO., LTD., SHENZHEN SIRUIQI ELECTRONIC COMMERCE CO. LTD, SHENZHEN TAISHENHUI | **CIVIL ACTION NO.** <br><br><br> **COMPLAINT** <br><br> **Jury Trial Requested** <br><br> **FILED UNDER SEAL** |

TECHNOLOGY CO., LTD., SHOP1103058341
STORE, SHOP1103667279 STORE,
SHOP1103936544 STORE, SPOT IT CARD GAME
STORE, THOUSANDS OF TOYS STORE,
TWOAIXINGCHENG STORE, VARIANCE OF
SQUARES Y STORE, VIBRANT CLOTHING
STORE, WANG CHAUN LUNG STORE,
WONDERFUL FUN STORE, WUHAN JOHN KIDS
TOYS CO., LTD., XIAMEN HOTITEM
TECHNOLOGY CO., LTD., YANGZHOU
HUANZHIDOU TOY CO., LTD., YANGZHOU LSD
ELECTRONICS CO., LTD., YGLY CHOICE STORE,
YIWU ALLO TRADING CO., LTD., YIWU SEASIDE
TRADING CO., LTD., YIWU XINGXIN
INTERNATIONAL TRADE CO., LTD., YIWU XIRUI
TRADE CO., LTD., YIWU YIBU IMPORT &
EXPORT CO., LTD., YOU ARE REALLY
BEAUTIFUL STORE and YUDU JINYONGFA
BUILDING MATERIALS SALES CENTER,

*Defendants*

## GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Supercell Oy** | Supercell Oy |
| **Defendants** | Bandai Gua Gua Model Toys Store, Childlike Figures Store, Children Growing Tree Store, China Toy Hall Store, Chinese Good Store, Corn Hunter Global Toy Store, Cozy Pillow Kingdom Store, Dongguan Dreamer Industrial Co., Ltd., Dongguan Ruigao Plastic Products Co., Ltd., Hapinquan Store, Jia Han Toys Store, Jiangsu Fondin Guest Amenities Co., Ltd., Jiaxing Big Bear Toys Co., Ltd., Luoluo Lns Stationery Store, Mr Bear3rd Plush Store, Nanning Maggie Trading Co., Ltd., Shenzhen Hengtaihao Technology Co., Ltd., Shenzhen Ji Mi Technology Co., Ltd., Shenzhen Lanbowan Technology Co., Ltd., Shenzhen Siruiqi Electronic Commerce Co. LTD, Shenzhen Taishenhui Technology Co., Ltd., Shop1103058341 Store, Shop1103667279 Store, Shop1103936544 Store, Spot It Card Game Store, Thousands Of Toys Store, Twoaixingcheng Store, Variance Of Squares Y Store, Vibrant Clothing Store, Wang Chaun Lung Store, Wonderful Fun Store, Wuhan John Kids Toys Co., Ltd., Xiamen Hotitem Technology Co., Ltd., Yangzhou Huanzhidou Toy Co., Ltd., Yangzhou Lsd Electronics Co., Ltd., YGLY CHOICE Store, Yiwu Allo Trading Co., Ltd., Yiwu Seaside Trading Co., Ltd., Yiwu Xingxin International Trade Co., Ltd., Yiwu Xirui Trade Co., Ltd., Yiwu Yibu Import & Export Co., Ltd., You Are Really Beautiful Store and Yudu Jinyongfa Building Materials Sales Center |
| **Alibaba** | Alibaba.com Singapore E-Commerce Pte. Ltd. and/or any other entity that owns and/or operates the Alibaba.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | AliExpress E-Commerce One Pte., Ltd. and/or any other entity that owns and/or operates the AliExpress.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |

i

| | |
|---|---|
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Ignatius Dec.** | Declaration of Markku Ignatius in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Brawl Stars Game** | A multiplayer game that allows users to pick characters with special abilities, called "Brawlers," to battle against other players using a combination of strategy and teamwork |
| **Brawl Stars Products** | A variety of products featuring characters from the Brawl Stars Game using and/or sold in connection with the Brawl Stars Marks, including, but not limited to, apparel, keychains, stationery, accessories, backpacks, and plush toys |
| **Brawl Stars Marks** | U.S. Trademark Registration Nos.: 5,567,901 for "BRAWL STARS" for a variety of goods in Classes 16, 25 and 28 and 6,914,997 for "BRAWL" for a variety of goods in Classes 16, 25 and 28 |
| **Counterfeit Products** | Products bearing or used in connection with the Brawl Stars Marks and/or marks that are confusingly similar to the Brawl Stars Marks, and/or products in packaging and/or with labeling bearing the Brawl Stars Marks and/or marks that are confusingly similar to the Brawl Stars Marks, and/or products that are identical or confusingly similar to the Brawl Stars Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, |

| | employees, agents, servants and all persons in active concert or participation with any of them |
|---|---|
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, make, use, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiff, a private limited company organized and existing under the laws of Finland, by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.      This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and related state and common law claims, arising from the infringement of the Brawl Stars Marks, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Brawl Stars Products by Defendants.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this action as to form part of the same case or controversy.

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the

2

Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

    c.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

    d.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

    e.    Upon information and belief, Defendants are aware of Plaintiff, its Brawl Stars Products and Brawl Stars Marks, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.    Plaintiff Supercell Oy is a private limited company organized and existing under the laws of Finland with an address of Jätkäsaarenlaituri 1, 00180, Helsinki, Finland.

6.    Upon information and belief, Defendants are merchants on the Alibaba and/or AliExpress online marketplace platforms, through which Defendants offer for sale and/or sell Counterfeit Products, with principal places of business at the addresses identified, if any, in the screenshots of Defendants' Merchant Storefronts in **Exhibit A**.

## GENERAL ALLEGATIONS
### Plaintiff and Its Well-Known Brawl Stars Products

7.    Supercell is a leading global game development company that designs and

3

develops engaging multiplayer and social games, including, but not limited to: Brawl Stars, Hay Day, Clash of Clans, Boom Beach and Clash Royale

8.    One of Supercell's most popular games is Brawl Stars, a multiplayer game that allows users to pick characters with special abilities, called "Brawlers," to battle against other players using a combination of strategy and teamwork.

9.    Released in 2018, Brawl Stars generated 30.8 million downloads during its first month of release[2] and became Supercell's second highest grossing game across its game portfolio in 2020, accumulating around $526 million.[3]

10.    Additionally, despite the ultra-competitive landscape, in 2020, Supercell remained "among the top 10 most successful publishers on the iPhone and Android app stores."[4]

11.    Currently, consumers are still downloading Brawl Stars, with 6.48 million downloads worldwide in December 2024.[5]

12.    In addition to developing the Brawl Stars Game, Supercell has created several key strategic partnerships with numerous licensees ("Authorized Licensees") as part of its extensive global licensing program for consumer merchandise, including a variety of products featuring its characters and using and/or sold in connection with the Brawl Stars Marks, which include innovative product lines across multiple consumer product categories.

13.    While Supercell has gained significant common law trademark and other rights in Brawl Star Products through use, advertising, and promotion, Supercell has also protected its

---

[2] J. Clement, *Number of Brawl Stars app downloads worldwide from December 2018 to December 2024*, STATISTA (Jan. 10, 2025), https://www.statista.com/statistics/1358813/global-brawl-stars-downloads/.
[3] Craig Chappie, *Supercell Celebrates Another Unicorn as Brawl Stars Passes $1 Billion*, SENORTOWER (Jan. 2021), https://sensortower.com/blog/brawl-stars-revenue-one-billion.
[4] Tim Bradshaw, *Supercell profits slide again despite mobile gaming boom*, THE FINANCIAL TIMES (Feb. 16, 2021), https://www.ft.com/content/aa0c5b43-e2c5-48ea-9fc3-843ef0d053c0.
[5] J. Clement, *Number of Brawl Stars app downloads worldwide from December 2018 to December 2024*, STATISTA (Jan. 10, 2025), https://www.statista.com/statistics/1358813/global-brawl-stars-downloads/.

valuable trademark rights to the Brawl Stars Game and Brawl Stars Products by filing for and obtaining federal trademark registrations.

14.    For example, Supercell is the owner of the following U.S. Trademark Registration Nos.: 5,567,901 for "BRAWL STARS" for a variety of goods in Classes 16, 25 and 28 and 6,914,997 for "BRAWL" for a variety of goods in Classes 16, 25 and 28. A true and correct copy of the registration certificates for the Brawl Stars Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

15.    The Brawl Stars Marks were first used in commerce on or before the dates of first use as reflected in the registrations attached hereto as **Exhibit B**.

16.    Supercell has spent substantial time, money, and effort building up and developing consumer recognition, awareness and goodwill in its Brawl Star Products and Brawl Stars Marks.

17.    Supercell's success is also due to its use of the highest quality materials and processes in making the Brawl Stars Products.

18.    Additionally, Supercell owes a substantial amount of the success of the Brawl Stars Game and Brawl Stars Products to its consumers, and word-of-mouth buzz that its consumers have generated.

19.    Supercell's efforts, the quality of its Brawl Stars Game and Brawl Stars Products, its marketing, promotion and distribution efforts, and the word-of-mouth buzz generated by its consumers have caused the Brawl Stars Marks to be prominently placed in the minds of the public. Members of the public and retailers have become familiar with Supercell's Brawl Stars Marks, Brawl Stars Game and Brawl Stars Products and have come to associate them exclusively with Supercell.

20.    As a result of such associations, the Brawl Stars Marks have acquired a valuable

reputation and goodwill among the public.

21.     Supercell has gone through great lengths to protect its interests in the Brawl Stars Marks.  No one other than Supercell and its Authorized Licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Brawl Stars Marks.

### Alibaba, AliExpress and Defendants' User Accounts

22.     Alibaba and AliExpress are online marketplaces and e-commerce platforms that allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

23.     As leaders of China's e-commerce and digital retail market, Alibaba and AliExpress (collectively, the "Alibaba Group"), have generated hundreds of billions in sales worldwide.[6] International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress. For example, in 2019, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[7]

24.     In the fiscal year ending on March 31, 2024, the Alibaba Group's revenue was approximately $130.35 billion.[8]

25.     The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia

---

[6] *See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.
[7] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.
[8] Xin Ou, *Annual revenue of Alibaba Group from financial year 2014 to 2024*, STATISTA (June 14, 2022) https://www.statista.com/statistics/225614/net-revenue-of-alibaba/.

and Brazil.[9]

26.    Additionally, according to Business Insider, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[10] In 2021, Alibaba set a new Singles Day record with $84.5 billion in sales across the eleven (11) day event.[11]

27.    Alibaba and AliExpress declined to share their total sales for Singles Day 2023; however, indicated 2023 sales had "a recorded year-on year growth" and 2022 sales were "in line" with the $84.5 billion in sales reported in 2021.[12]

28.    As addressed in the Wall Street Journal, Fortune and the New York Times,[13] and as reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on Alibaba and AliExpress,[14] an astronomical number of counterfeit

---

[9] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China*, DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[10] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[11] Dan Berthiaume, *Alibaba sets new Singles Day record with $84.5 billion in sales*, CHAIN STORE AGE (Nov. 11, 2021), https://chainstoreage.com/alibaba-sets-new-singles-day-record-845-billion-sales.

[12] Casey Hall, *China's Singles Day Festival Wraps Up with E-commerce Giants Reporting Sales Growth,* Reuters (Nov. 12, 2023) https://www.reuters.com/world/china/chinas-singles-day-sales-festival-wraps-up-with-e-commerce-giants-reporting-2023-11-12/; Xin Ou, *Alibaba's Gross Merchandise Volume On Singles' Day From 2011 to 2021,* STATISTA (Feb. 27, 2024), https://www.statista.com/statistics/364543/alibaba-singles-day-1111-gmv/; Evelyn Cheng, *Alibaba says 15% of China delivery areas were disrupted during Singles Day shopping festival*, CNBC (Nov. 17, 2022) https://www.cnbc.com/2022/11/18/alibaba-says-15percent-of-china-delivery-areas-disrupted-during-singles-day.html.

[13] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes,* N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[14] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba,* MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end

and infringing products are offered for sale and sold on Alibaba.com and AliExpress.com, as well as other online marketplace platforms, at a rampant rate.

29.     Additionally, the Office of the United States Trade Representative ("USTR") publishes an annual "Notorious Markets List" which highlights specific physical and online markets around the world that are reported to be engaging in and facilitating substantial copyright piracy and trademark counterfeiting, and which is intended to help the U.S. and foreign governments prioritize intellectual property rights (IPR) enforcement that protects job-supporting innovation and creativity in the U.S. and around the world.[15]

30.     In December 2016, the USTR added Alibaba to its "Notorious Markets" list due to its high levels of "reported counterfeiting and piracy."[16]

31.     In February of 2022, the Office of the United States Trade Representative ("USTR") added AliExpress to its list of 2021 "notorious markets," which are "markets that reportedly facilitate substantial trademark counterfeiting."[17]

32.     On January 31, 2023, the USTR released its 2022 Review of Notorious Markets for Counterfeiting and Piracy, and AliExpress was again designated a "notorious market."[18] The

---

*in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

[15] *See* Press Release, Office of the United States Trade Representative, USTR Releases 2020 Review of Notorious Markets for Counterfeiting and Piracy (Jan. 2021), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2021/january/ustr-releases-2020-review-notorious-markets-counterfeiting-and-piracy; Office of The United States Trade Representative, 2020 Review of Notorious Markets for Counterfeiting and Piracy (2020), *available                                                                                                                                                    at* https://ustr.gov/sites/default/files/files/Press/Releases/2020%20Review%20of%20Notorious%20Markets%20for%20 0Counterfeiting%20and%20Piracy%20(final).pdf.

[16] Laura Stevens, *Alibaba Lands on U.S. Governments' 'Notorious Markets' List for Fakes,* WALL STREET JOURNAL (Dec. 21, 2016), https://www.wsj.com/articles/alibaba-lands-on-u-s-governments-notorious-markets-list-for-fakes-1482356081; *see also Alibaba Lands on U.S. Notorious Markets List for Lax Counterfeit Policies*, CHINATECHNEWS (Dec. 22, 2016), https://www.chinatechnews.com/2016/12/22/24615-alibaba-lands-on-u-s-notorious-markets-list-for-lax-counterfeit-policies.

[17] Michelle Toh, *The US accuses Tencent and Alibaba of letting sellers traffic fake goods*, CNN (Feb. 18, 2022) https://www.cnn.com/2022/02/17/business/china-tencent-alibaba-notorious-markets-list-intl-hnk/index.html.

[18] USTR Releases 2022 Review of Notorious Markets for Counterfeiting and Piracy, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE (Jan. 31, 2023), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy.

USTR specifically noted that a "key concern of right holders is that penalties for repeat infringers do not stop counterfeit sellers on AliExpress from remaining on the market, such as by operating multiple accounts.[19]

33.    Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Alibaba and AliExpress, as well as potentially yet undiscovered additional online marketplace platforms.

34.    Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

35.    Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

36.    Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

### Defendants' Wrongful and Infringing Conduct

37.    Particularly in light of Plaintiff's success with its Brawl Stars Game and Brawl Stars Products, as well as the reputation they have gained, Plaintiff and its Brawl Stars Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Brawl Stars Game, Brawl Stars Products and Brawl Stars Marks and Plaintiff investigates and enforces against such activities.

---

[19] *Id.*

38.     Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts. Screenshots of Infringing Listings from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit A** attached hereto and incorporated herein by reference.

39.     Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Brawl Stars Products or to use the Brawl Stars Marks, or any marks that are confusingly similar to the Brawl Stars Marks.

40.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Brawl Stars Products, only with minor variations that no ordinary consumer would recognize.

41.     During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit A**.

42.     Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S.,

including to customers located in New York. Plaintiff's findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in **Exhibit A**.

43.    For example, below is a listing for Defendant Twoaixingcheng Store's Counterfeit Product ("Twoaixingcheng Store Infringing Listing" and "Twoaixingcheng Store Counterfeit Product," respectively). The Twoaixingcheng Store Infringing Listing appears on Defendant Twoaixingcheng Store's Merchant Storefront, https://www.aliexpress.com/store/1103515292, and offers the Twoaixingcheng Store Counterfeit Product for $6.05 per item, using, featuring and/or incorporating one or more of the Brawl Stars Marks and/or confusingly similar marks in the descriptions and/or product images in the body of the listing title: "New Summer Hot Game **Brawl** Sports Children T-shirt Short Sleeve Cotton Kids T Shirt Baby Boy Girl Clothing Fashion Casual Tee Top" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the Twoaixingcheng Store Counterfeit Product is virtually identical to characters and images featured in the Brawl Stars Game. There is no question that the Twoaixingcheng Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Brawl Stars Products or that the Twoaixingcheng Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Brawl Stars Marks:

**Image from Brawl Stars Game**            **Defendant's Counterfeit Product**

 

44.     By way of another example, below is a listing for Defendant Wuhan John Kids
Toys Co., Ltd's Counterfeit Product ("Wuhan John Kids Toys Co., Ltd Infringing Listing" and
"Wuhan John Kids Toys Co., Ltd Counterfeit Product," respectively).  The Wuhan John Kids
Toys Co., Ltd Infringing Listing appears on Defendant Wuhan John Kids Toys Co., Ltd's
Merchant Storefront, https://www.aliexpress.com/store/1103949222, and offers the Wuhan
John Kids Toys Co., Ltd Counterfeit Product for $2.18 per item, using, featuring and/or
incorporating one or more of the Brawl Stars Marks and/or confusingly similar marks in the
descriptions and/or product images in the body of the listing title: "New Design **Brawl Stars**
Plush Buddies Cute Anime Kawaii Cotton Spike Cactus Figure Toy for Home Usage Perfect
Birthday Gift" (emphasis added) and in the descriptions and/or product images in the body of
the listing. Further, the Wuhan John Kids Toys Co., Ltd Counterfeit Product is virtually
identical to characters and images featured in the Brawl Stars Game. There is no question that
the Wuhan John Kids Toys Co., Ltd Counterfeit Product is designed to confuse and mislead
consumers into believing that they are purchasing one of Plaintiff's Brawl Stars Products or
that the Wuhan John Kids Toys Co., Ltd Counterfeit Product is otherwise approved by or

sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by

engaging in the unauthorized use of the Brawl Stars Marks:

| **Image from Brawl Stars Game** | **Defendant's Counterfeit Product** |
| :---: | :---: |
|  |  |

45.     As another example, below is a listing for Defendant Corn Hunter Global Toy Store

Counterfeit Product ("Corn Hunter Global Toy Store Infringing Listing" and "L Corn Hunter

Global Toy Store Counterfeit Product," respectively). The Corn Hunter Global Toy Store

Infringing Listing appears on Defendant Corn Hunter Global Toy Store Merchant Storefront,

https://shoprenderview.aliexpress.com/credential/showcredential.htm, and offers the Corn Hunter

Global Toy Store Counterfeit Product for $3.00 per item, using, featuring and/or incorporating

one or more of the Brawl Stars Marks and/or confusingly similar marks in the descriptions and/or

product images in the body of the listing title "Kawaii **Brawl Stars** plush toys. Plush dolls are soft

but not easily deformed. Holiday gifts, Christmas gift doll" (emphasis added) and in the

descriptions and/or product images in the body of the listing. Further, the Corn Hunter Global Toy

Store Counterfeit Product is virtually identical to characters and images featured in the Brawl Stars

Game. There is no question that Corn Hunter Global Toy Store Counterfeit Product is designed to

confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Brawl

Stars Products or that the Corn Hunter Global Toy Store Counterfeit Product is otherwise approved

by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Brawl Stars Marks:

| **Image from the Brawl Stars Game** | **Defendant's Counterfeit Product** |
| :---: | :---: |
|  |  |

46.    By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Brawl Stars Marks, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Brawl Stars Marks in order to confuse consumers into believing that such Counterfeit Products are the Brawl Stars Products and aid in the promotion and sales of their Counterfeit Products. Defendants' conduct began long after Plaintiff's adoption and use of the Brawl Stars Marks, after Plaintiff obtained federal registrations in the Brawl Stars Marks, as alleged above, and after Plaintiff's Brawl Stars Products and the Brawl Stars Marks became well-known to the purchasing public.

47.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Brawl Stars Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Brawl Stars Products, and in bad faith adopted the Brawl Stars Marks.

48.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, its Brawl Stars Marks and Brawl Stars Products.

49.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

50.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Brawl Stars Marks, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

51.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### (Trademark Counterfeiting)

**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

52.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

53.     Plaintiff is the exclusive owner of all rights and title to the Brawl Stars Marks.

54.     Plaintiff has continuously used the Brawl Stars Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

55.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Brawl Stars Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Brawl Stars Marks and/or used spurious designations that are identical with, or indistinguishable from, the Brawl Stars Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

56.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Brawl Stars Marks through their participation in such activities.

57.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Brawl Stars Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

58.     Defendants' unauthorized use of the Brawl Stars Marks on or in connection with

16

the Counterfeit Products was done with notice and full knowledge that such use was not authorized

or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from

the incalculable goodwill inherent in the Brawl Stars Marks.

59.    Defendants' actions constitute willful counterfeiting of the Brawl Stars Marks in

violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

60.    As a direct and proximate result of Defendants' illegal actions alleged herein,

Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff,

its business, its reputation and its valuable rights in and to its Brawl Stars Marks and the goodwill

associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff

has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to

cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Brawl

Stars  Marks.

61.    Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive

relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of

Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and

advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble

damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods

sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [15 U.S.C. § 1114/Lanham Act § 32(a)]

62.    Plaintiff repleads and incorporates by reference each and every allegation set forth

in the preceding paragraphs as if fully set forth herein.

63.    Plaintiff has continuously used its Brawl Stars Marks in interstate commerce since

on or before the dates of first use as reflected in the registration certificates attached hereto as

**Exhibit B**.

64.     Plaintiff, as owner of all rights, title and interest in and to the Brawl Stars Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

65.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registration for Brawl Stars Marks.

66.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Brawl Stars Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Brawl Stars Products and/or related products bearing the Brawl Stars Marks into the stream of commerce.

67.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Brawl Stars Marks and/or which are identical or confusingly similar to the Brawl Stars Marks.

68.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Brawl Stars Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

69.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Brawl

Stars Marks.

70. Defendants' egregious and intentional use of the Brawl Stars Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Brawl Stars Products or are otherwise associated with, or authorized by, Plaintiff.

71. Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Brawl Stars Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

72. Defendants' continued, knowing, and intentional use of the Brawl Stars Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Brawl Stars Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

73. As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Brawl Stars Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Brawl Stars Marks.

74. Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and

advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

75.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

76.     Plaintiff, as the owner of all right, title and interest in and to the Brawl Stars Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

77.     The Brawl Stars Marks are inherently distinctive and/or have acquired distinctiveness.

78.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Brawl Stars Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are the Brawl Stars Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Brawl Stars Marks, to

Defendants' substantial profit in blatant disregard of Plaintiff's rights.

79.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Brawl Stars Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Brawl Stars Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Brawl Stars Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Brawl Stars Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

80.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Brawl Stars Marks would cause confusion, mistake or deception among purchasers, users and the public.

81.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff's Brawl Stars Products and Brawl Stars Marks.

82.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Brawl Stars Products and by depriving Plaintiff of the value of its Brawl Stars Marks as commercial

assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Brawl Stars Marks.

83.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

84.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

85.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Brawl Stars Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

86.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive

consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

87.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

88.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

89.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Brawl Stars Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Brawl Stars Marks as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

90.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Brawl Stars Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.    For an award of damages to be proven at trial for common law unfair competition;

F.    For a preliminary and permanent injunction by this Court enjoining and prohibiting

Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

     i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

     ii. directly or indirectly infringing in any manner Plaintiff's Brawl Stars Marks;

     iii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Brawl Stars Marks to identify any goods or services not authorized by Plaintiff;

     iv. using Plaintiff's Brawl Stars Marks or any other marks that are confusingly similar to the Brawl Stars Marks, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

     v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered

for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.  engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.    from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations,

or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.  providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.  instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

G.    For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe Plaintiff's Brawl Stars Marks, or bear any marks that are confusingly similar to the Brawl Stars Marks;

H.    For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe Plaintiff's Brawl Stars Marks, or bear any marks that are confusingly similar to the Brawl Stars Marks pursuant to 15 U.S.C. § 1118;

I.    For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting,

distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

J.    For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

K.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

L.    For Plaintiff's reasonable attorneys' fees;

M.    For all costs of suit; and

N.    For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: March 20, 2025                                Respectfully submitted,

                                                     EPSTEIN DRANGEL LLP

                                                     BY:  _____
                                                     Gabriela N. Nastasi
                                                     gnastasi@ipcounselors.com
                                                     Jason M. Drangel (JD 7204)
                                                     jdrangel@ipcounselors.com
                                                     Ashly E. Sands (AS 7715)
                                                     asands@ipcounselors.com
                                                     Danielle S. Futterman (DY 4228)
                                                     dfutterman@ipcounselors.com
                                                     Melissa J. Levine
                                                     mlevine@ipcounselors.com
                                                     60 East 42nd Street, Suite 1250
                                                     New York, NY 10165
                                                     Telephone: (212) 292-5390
                                                     Facsimile: (212) 292-5391
                                                     *Attorneys for Plaintiff*
                                                     *Supercell Oy*