UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
   SUPERCELL OY,

                      Plaintiff,

           -against-                          25-CV-2312 (VSB)

                                            **SEALED ORDER**

   BANDAI GUA GUA MODEL TOYS
   STORE, *et al.*,

                     Defendants.
------------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

      On March 25, 2025, the Court held an ex parte conference with Plaintiff's counsel to consider the following ex parte submissions: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery against Defendants, Third Party Service Providers and Financial Institutions in light of Defendants' intentional and willful offerings for sale and/or sales of Counterfeit Products.[1]  Having reviewed the Application, Declarations of Markku Ignatius and Gabriela N. Nastasi, along with exhibits attached thereto and other evidence submitted in support thereof, the Court makes the following findings of fact and conclusions of law:

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary, which is part of Plaintiff's Complaint, filed on March 20, 2025.

**PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW**

1. Supercell is a leading global game development company that designs and develops engaging multiplayer and social games, including, but not limited to: Brawl Stars, Hay Day, Clash of Clans, Boom Beach and Clash Royale

2. One of Supercell's most popular games is Brawl Stars, a multiplayer game that allows users to pick characters with special abilities, called "Brawlers," to battle against other players using a combination of strategy and teamwork.

3. Released in 2018, Brawl Stars generated 30.8 million downloads during its first month of release[2] and became Supercell's second highest grossing game across its game portfolio in 2020, accumulating around $526 million.[3]

4. Additionally, despite the ultra-competitive landscape, in 2020, Supercell remained "among the top 10 most successful publishers on the iPhone and Android app stores."[4]

5. Currently, consumers are still downloading Brawl Stars, with 6.48 million downloads worldwide in December 2024.[5]

6. In addition to developing the Brawl Stars Game, Supercell has created several key strategic partnerships with numerous licensees ("Authorized Licensees") as part of its extensive global licensing program for consumer merchandise, including a variety of products featuring its characters and using and/or sold in connection with the Brawl Stars Marks, which include innovative product lines across multiple consumer product categories.

---

[2] J. Clement, *Number of Brawl Stars app downloads worldwide from December 2018 to December 2024*, STATISTA (Jan. 10, 2025), https://www.statista.com/statistics/1358813/global-brawl-stars-downloads/.
[3] Craig Chappie, *Supercell Celebrates Another Unicorn as Brawl Stars Passes $1 Billion*, SENORTOWER (Jan. 2021), https://sensortower.com/blog/brawl-stars-revenue-one-billion.
[4] Tim Bradshaw, *Supercell profits slide again despite mobile gaming boom*, THE FINANCIAL TIMES (Feb. 16, 2021), https://www.ft.com/content/aa0c5b43-e2c5-48ea-9fc3-843ef0d053c0.
[5] J. Clement, *Number of Brawl Stars app downloads worldwide from December 2018 to December 2024*, STATISTA (Jan. 10, 2025), https://www.statista.com/statistics/1358813/global-brawl-stars-downloads/.

7. While Supercell has gained significant common law trademark and other rights in Brawl Star Products through use, advertising, and promotion, Supercell has also protected its valuable trademark rights to the Brawl Stars Game and Brawl Stars Products by filing for and obtaining federal trademark registrations.

8. For example, Supercell is the owner of the following U.S. Trademark Registration Nos.: 5,567,901 for "BRAWL STARS" for a variety of goods in Classes 16, 25 and 28 and 6,914,997 for "BRAWL" for a variety of goods in Classes 16, 25 and 28.

9. The Brawl Stars Marks are currently in use in commerce in connection with the Brawl Stars Products.

10. Supercell has spent substantial time, money, and effort building up and developing consumer recognition, awareness and goodwill in its Brawl Star Products and Brawl Stars Marks.

11. Supercell's success is also due to its use of the highest quality materials and processes in making the Brawl Stars Products.

12. Additionally, Supercell owes a substantial amount of the success of the Brawl Stars Game and Brawl Stars Products to its consumers, and word-of-mouth buzz that its consumers have generated.

13. Supercell's efforts, the quality of its Brawl Stars Game and Brawl Stars Products, its marketing, promotion and distribution efforts, and the word-of-mouth buzz generated by its consumers have caused the Brawl Stars Marks to be prominently placed in the minds of the public. Members of the public and retailers have become familiar with Supercell's Brawl Stars Marks, Brawl Stars Game and Brawl Stars Products and have come to associate them exclusively with Supercell.

14. As a result of such associations, the Brawl Stars Marks have acquired a valuable reputation and goodwill among the public.

15. Supercell has gone through great lengths to protect its interests in the Brawl Stars Marks. No one other than Supercell and its Authorized Licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Brawl Stars Marks. Authorized Licensees are not entitled to issue licenses themselves or otherwise outsource the manufacturing of the products bearing the Brawl Stars Marks.

16. Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying and/or offering for sale Counterfeit Products through Defendants' User Accounts and Merchant Storefronts with Alibaba and/or AliExpress.

17. Defendants are not, nor have they ever been, authorized distributors or licensees of the Brawl Stars Products. Neither Plaintiff, nor any of Plaintiff's authorized agents, have consented to Defendants' use of the Brawl Stars Marks, nor has Plaintiff consented to Defendants' use of marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Brawl Stars Marks.

18. Plaintiff is likely to prevail on its Lanham Act and related common law claims at trial.

19. As a result of Defendants' infringements, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries before Defendants can be heard in opposition, unless Plaintiff's Application for *ex parte* relief is granted:

    a. Defendants have offered for sale and sold substandard Counterfeit Products that infringe the Brawl Stars Marks. For some Defendants, Plaintiff's counsel can input a New York-shipping address in placing orders. For other Defendants, Plaintiff's counsel has confirmed that a customer representative from that particular Defendant

confirmed that products can be shipped to a New York-address. Notably, Plaintiff's counsel contends that they have purchased and received at least one product from Defendant Wonderful Fun Store which was shipped to an address in New York. (*See* Futterman Decl.)[6] This product was determined to be counterfeit due to its "inappropriate cellophane packaging," "improper hangtag bearing 'MADE IN CHINA', poor quality materials," less-vibrant coloring, and significantly cheaper price than an authentic Brawl Stars Product. (*Id.* ¶¶ 2–4.) Other products were purchased and are in the process of shipment, but have not been received by Plaintiff's counsel to date.

b. Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for the Brawl Stars Products; and

c. Plaintiff has well-founded fears that if it proceeds on notice to Defendants on this Application, Defendants will: (i) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of or deal with Counterfeit Products or other goods that infringe the Brawl Stars Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (ii) inform their suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products or other goods infringing the Brawl Stars Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto

---

[6] "Futterman Decl." refers to the declaration of Plaintiff's counsel Danielle S. Futterman submitted to the Court ex parte by email on March 25, 2025.

that are in their possession or under their control, (iii) secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from its sales of Counterfeit Products or other goods infringing the Brawl Stars Marks and records relating thereto that are in their possession or under their control and/or (iv) open new User Accounts and Merchant Storefront under new or different names and continue to offer for sale and sell Counterfeit Products with little to no consequence.

20. The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the Brawl Stars Marks and to its reputations if a temporary restraining order is not issued.

21. Public interest favors issuance of the temporary restraining order in order to protect Plaintiff's interests in and to its Brawl Stars Marks, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as Brawl Stars Products.

22. Plaintiff has not publicized its request for a temporary restraining order in any way.

23. If Defendants are given notice of the Application, they are likely to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing the Brawl Stars Marks. Therefore, good cause exists for granting Plaintiff's request for an asset restraining order. It typically takes the Financial Institutions a minimum of five (5) days after service of the Order to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts and it is anticipated that it will take the Third Party Service Providers a minimum of five (5) days to freeze Defendants'

Merchant Storefronts. As such, the Court allows enough time for Plaintiff to serve the Financial Institutions and Third Party Service Providers with this Order, and for the Financial Institutions and Third Party Service Providers to comply with the Paragraphs I(B)(1) and I(C)(1) of this Order, respectively, before requiring service on Defendants.

24. The next issue is Plaintiff's request for alternative service for the Defendants. Federal Rule of Civil Procedure 4(f) allows three means of service on a defendant in a foreign country: "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . .; or (3) by other means not prohibited by international agreement, as the court orders." "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Vega v. Hastens Beds, Inc.*, 342 F.R.D. 61, 64 (S.D.N.Y. 2022) (citation omitted). "China is a signatory to the Hague Convention." *Pinkfong Co., Inc. v. Avensy Store* ("*Pinkfong I*"), No. 1:23-CV-09238, 2023 WL 8531602, at *1 (S.D.N.Y. Nov. 30, 2023) (citation omitted). Plaintiff requests alternative service, regardless of whether the Hague Convention applies in this context.

25. First, Plaintiff argues that the Hague Convention does not apply because Defendants' addresses are unknown. An address is "unknown" if Plaintiff demonstrates that it "exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018).

26. "Plaintiffs have been found to have exercised reasonable diligence to discover a physical address where the plaintiff [1] researched defendant's websites associated with defendant's domain names, [2] completed multiple Internet-based searches, [3] called known phone numbers, and [4] conducted in-person visits, where the plaintiff [5] performed extensive investigation and [6] issued subpoenas to the relevant domain registrars and email providers, and where a plaintiff [7] has attempted to obtain the defendant's address in a variety of ways." *Pinkfong I*, 2023 WL 8531602, at *2 (citations omitted and alterations adopted).

27. Here, Plaintiff's counsel proffers its unsuccessful attempts to discover each Defendant's physical address. Plaintiff's counsel searched three Chinese search engines for each company Defendant's registration information and also attempted to find phone numbers associated with those addresses. For the addresses that were found, Plaintiff's counsel mailed test documents to those mailing address to determine the accuracy of those addresses. The breakdown of the addresses of the forty-three (43) Defendants is as follows: (a) One Defendant has a "false or outdated" address and Plaintiff's counsel is unable to locate an accurate address; (b) Ten Defendants "display addresses that appear to be accurate," but Plaintiff's counsel does not have sufficient identifying information to send test mailings; (c) Ten Defendants "display addresses that appear to be accurate," but Plaintiff's counsel's test mailings were unsuccessful; and (d) Twenty-two Defendants "display addresses that appear to be accurate" and the test mailings were successful. Even so, Plaintiff's counsel argues that they "cannot confirm with any certainty that the addresses it was able to send Test Mailings to" are the accurate addresses for Defendants. I find that only the one Defendant who has a "false or outdated address" has an "unknown

address" such that the Hague Convention does not apply. Plaintiff has failed to show that the other forty-two (42) have "unknown" addresses such that the Hague Convention does not apply. *See Pinkfong Co., Inc. v. Avensy Store* ("*Pinkfong II*"), No. 1:23-CV-09238, 2023 WL 8530159, at *3 (S.D.N.Y. Nov. 30, 2023) (allowing alternative service only as to defendants who had "false addresses"). Accordingly, Plaintiff's motion for alternative service is GRANTED as to that one Defendant who has a "false or outdated address."

28. Because the Hague Convention applies to the other forty-two (42) Defendants, Plaintiff must demonstrate that the Hague Convention does not prohibit the proffered alternative service by email and online publication. *See Pinkfong I*, 2023 WL 8531602, at *1. However, several courts in this Circuit have held that service via email on Chinese defendants is not permitted by the Hague Convention. *See, e.g.*, *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1393 (S.D.N.Y. 2022); *Pinkfong I*, 2023 WL 8531602, at *3. I agree with *Smart Study* and the other courts who have relied on *Smart Study*. Accordingly, Plaintiff's motion for alternative service is DENIED as to the remaining forty-two Defendants.[7]

29. Similarly, if Defendants are given notice of the Application, they are likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products. Therefore, Plaintiff has good cause to be granted expedited discovery.

---

[7] I note that Plaintiff seems to suffer real injury from these trademark infringements and is entitled to a temporary restraining order. However, absent Defendants' notice of this action, which is accomplished via service, Plaintiff is not likely to obtain a preliminary injunction. Although the Court understands that service may cause delay, absent a change in binding case law from the Second Circuit or the Supreme Court, I agree with *Smart Study* and do not grant Plaintiff's request for alternative service.

## ORDER

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED IN PART AND DENIED IN PART** as follows:

### I. Temporary Restraining Order

A. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of the Court:

1) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the Brawl Stars Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Brawl Stars Marks;

2) operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order;

3) directly or indirectly infringing in any manner Plaintiff's Brawl Stars Marks;

4) using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Brawl Stars Marks to identify any goods or service not authorized by Plaintiff;

5) using Plaintiff's Brawl Stars Marks and/or any other marks that are confusingly similar to the Brawl Stars Marks on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

6)     using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

7)     secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

8)     effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

9)     knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(8) above and I(B)(1) and I(C)(1) below.

B. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of this Court:

1) secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court.

C. IT IS HEREBY ORDERED, as sufficient cause has been shown, that immediately upon receipt of service of this Order, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements, are restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of this Court:

1) operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order; and

2) instructing, aiding, or abetting Defendants and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs I(A)(1) through I(A)(8), I(B)(1) and I(C)(1) above, including, without limitation, by providing services necessary for Defendants to continue operating Defendants' User Accounts and Merchant Storefronts in violation of this Order.

## II. Order to Show Cause Why A Preliminary Injunction Should Not Issue And Order Of Notice

A. IT IS ORDERED that a telephonic hearing shall be held **April 16, 2025 at 2 p.m.** which Plaintiff may present its arguments in support of its request for issuance of a preliminary injunction. At such time, any Defendants may also be heard as to opposition to Plaintiff's Application. The dial-in number is **1-855-244-8681** and the access code is **2309 3085 835**. There is no attendee ID.

B. IT IS FURTHER ORDERED that opposing papers, if any, shall be filed electronically with the Court and served on Plaintiff's counsel by delivering copies thereof to the office of Epstein Drangel LLP at 60 East 42nd Street, Suite 1250, New York, NY 10165, Attn: Jason M. Drangel on or before April 11, 2025. Any reply papers are due April 14, 2025.

## III. Asset Restraining Order

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. 6201 and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Financial Institutions shall locate and attach Defendants' Financial Accounts and Defendants' Assets and shall provide written confirmation of such attachment to Plaintiff's counsel.

## IV. Order Authorizing Bifurcated and Alternative Service by Electronic Means

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 4(f)(3), as sufficient cause has been shown, that service may be made on, and shall be deemed effective as to that one Defendant with a "false or outdated" address if it is completed by the following means:

1) delivery of: (i) PDF copies of this Order together with the Summons and Complaint, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this

   Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of this Order together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking this Order to Defendants' e-mail addresses to be determined after having been identified by Alibaba and/or AliExpress pursuant to **Paragraph V(C)**.

B. IT IS FURTHER ORDERED, Plaintiff's motion for alternative service as to the remaining forty-two Defendants is DENIED. Similarly, Plaintiff has not shown why alternative service is appropriate for any other parties, including the Third Party Service Providers and Financial Institutions.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means to that one Defendant with a "false or outdated" address shall be made within five (5) days of the Financial Institutions and Third Party Service Providers' compliance with **Paragraphs III(A)** and **V(C)** of this Order.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that the Clerk of the Court shall issue a single original summons directed to all Defendants as listed in an attachment to the summons that will apply to all Defendants.

### V.  Order Authorizing Expedited Discovery

A. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1)  Within fourteen (14) days after receiving service of this Order, each Defendant shall serve upon Plaintiff's counsel a written report under oath providing:

  a. their true name and physical address;

  b. the name and location and URL of any and all websites that Defendants own and/or operate and the name, location, account numbers and URL for any and all User

> > Accounts and Merchant Storefronts on any Third Party Service Provider platform that Defendants own and/or operate;
>
> > c. the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;
>
> > d. the account details for any and all of Defendants' Financial Accounts, including, but not limited to, the account numbers and current account balances; and
>
> > e. the steps taken by each Defendant, or other person served to comply with **Section I**, above.
>
> 2) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.
>
> 3) Plaintiff may serve requests for the production of documents pursuant to Fed. R. Civ. P. 26 and 34, and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order the Financial Institutions served with this Order shall identify any and all of Defendants' Financial Accounts, and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants, including contact information for

Defendants (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts and confirmation of said compliance with this Order.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall identify any and all of Defendants' User Accounts and Merchant Storefronts, and provide Plaintiff's counsel with a summary report containing account details for any and all User Accounts and Merchant Storefronts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts and Defendants' Merchant Storefronts, contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses) and confirmation of said compliance with this Order.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receiving actual notice of this Order, all Financial Institutions who are served with this Order shall provide Plaintiff's counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to any and all of Defendants' Financial Accounts, including, but not limited to, documents and records relating to:

   a. account numbers;
   b. current account balances;
   c. any and all identifying information for Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;

    d. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

    e. any and all deposits and withdrawals during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

    f. any and all wire transfers into each and every one of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

E. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

    a. any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C);

    b.  the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C);

    c.  the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

    d.  Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Brawl Stars Marks and/or marks that are confusingly similar to, identical to and constitute an infringement of the Brawl Stars Marks.

## VI.    Security Bond

A. IT IS FURTHER ORDERED that Plaintiff shall place security in the amount of five-thousand Dollars ($5,000) with the Court which amount is determined adequate for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.

## VII.    Sealing Order

A. IT IS FURTHER ORDERED that Plaintiff's Complaint and exhibits attached thereto, and Plaintiff's *ex parte* Application and the Declarations of Markku Ignatius and Gabriela N. Nastasi in support thereof and exhibits attached thereto, and this Order shall remain sealed

until the Financial Institutions and Third Party Service Providers comply with **Paragraphs I(B)-(C), III(A) and V(C)** of this Order.

B. IT IS FURTHER ORDERED that Plaintiff's counsel submit a letter notifying me why this case should remain under seal, given the presumption of access and the public's First Amendment right to access judicial documents. *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Such a letter shall be filed within 14 days after Defendants are served with (1) the Complaint and exhibits attached thereto, (2) Plaintiff's ex parte Application and accompanying Declarations and exhibits attached thereto, and (3) this Order.

This Temporary Restraining Order without notice is entered April 2, 2025 and shall remain in effect for fourteen (14) days.

SO ORDERED.

Dated: April 2, 2025
New York, New York

Vernon S. Broderick
United States District Judge