UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                   :

  SUPERCELL OY,                       :

                                :

                       Plaintiff,    :               25-CV-2312 (VSB)

                                :

        -against-                :             **SEALED**

                                :       **AMENDED[1] ORDER**

  BANDAI GUA GUA MODEL TOYS    :
  STORE, *et al.*,                 :

                                :

                    Defendants.  :

                                :
-------------------------------------------------------X

<u>VERNON S. BRODERICK, United States District Judge</u>:

      On March 25, 2025, the Court held an ex parte conference with Plaintiff's counsel to

consider the following ex parte submissions: 1) a temporary restraining order ("TRO"); 2) an

order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3)

an order to show cause why a preliminary injunction should not issue; 4) an order authorizing

bifurcated and alternative service and 5) an order authorizing expedited discovery against

Defendants, Third Party Service Providers and Financial Institutions in light of Defendants'

intentional and willful offerings for sale and/or sales of Counterfeit Products.[2]

      On April 2, 2025, I issued a sealed order ("April 2 Order") granting in part and denying

in part Plaintiff's requests, including for a TRO. The April 2 Order, among other things, granted

---

[1] This Order amends my prior sealed order issued on April 2, 2025. This Order effectively (1) grants Plaintiff's request for alternative service by electronic means as to all Defendants, Third Party Service Providers, and Financial Institutions, and (2) extends the Temporary Restraining Order issued on April 2, 2025 until April 30, 2025. To the extent there is any conflict between this Order and the April 2 Order, this Order shall govern.

[2] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary, which is part of Plaintiff's Complaint, filed on March 20, 2025.

Plaintiff's request for alternative service as to one Defendant who had an "unknown address" but denied Plaintiff's request for alternative service as to the other forty-two Defendants, the Third Party Service Providers, and Financial Institutions. The April 2 Order also scheduled a show-cause hearing for a preliminary injunction for April 16, 2025 at 2 p.m., and set a briefing schedule where Defendants must file opposing papers by April 11, 2025, and Plaintiff must file reply papers by April 14, 2025.

That same day, on April 2, 2025, Plaintiff submitted a letter ex parte requesting that I modify the April 2 Order and allow alternative service for all Defendants, the Third Party Service Providers, and Financial Institutions. On April 9, 2025, Plaintiff submitted a letter ex parte requesting (1) an extension of the TRO in the April 2 Order and (2) a modification of the briefing schedule.

Having reviewed the Application, Declarations of Markku Ignatius and Gabriela N. Nastasi, along with exhibits attached thereto and other evidence submitted in support thereof, Plaintiff's April 2, 2025 letter, and Plaintiff's April 9, 2025 letter, the Court makes the following findings of fact and conclusions of law:

### PRELIMINARY FACTUAL FINDINGS[3] & CONCLUSIONS OF LAW

1. Supercell is a leading global game development company that designs and develops engaging multiplayer and social games, including, but not limited to: Brawl Stars, Hay Day, Clash of Clans, Boom Beach and Clash Royale

2. One of Supercell's most popular games is Brawl Stars, a multiplayer game that allows users to pick characters with special abilities, called "Brawlers," to battle against other players using a combination of strategy and teamwork.

---

[3] These factual findings are based on Plaintiff's allegations, which are assumed to be true solely for the purpose of adjudicating Plaintiff's request for this Order.

3.  Released in 2018, Brawl Stars generated 30.8 million downloads during its first month of release[4] and became Supercell's second highest grossing game across its game portfolio in 2020, accumulating around $526 million.[5]

4.  Additionally, despite the ultra-competitive landscape, in 2020, Supercell remained "among the top 10 most successful publishers on the iPhone and Android app stores."[6]

5.  Currently, consumers are still downloading Brawl Stars, with 6.48 million downloads worldwide in December 2024.[7]

6.  In addition to developing the Brawl Stars Game, Supercell has created several key strategic partnerships with numerous licensees ("Authorized Licensees") as part of its extensive global licensing program for consumer merchandise, including a variety of products featuring its characters and using and/or sold in connection with the Brawl Stars Marks, which include innovative product lines across multiple consumer product categories.

7.  While Supercell has gained significant common law trademark and other rights in Brawl Star Products through use, advertising, and promotion, Supercell has also protected its valuable trademark rights to the Brawl Stars Game and Brawl Stars Products by filing for and obtaining federal trademark registrations.

8.  For example, Supercell is the owner of the following U.S. Trademark Registration Nos.: 5,567,901 for "BRAWL STARS" for a variety of goods in Classes 16, 25 and 28 and 6,914,997 for "BRAWL" for a variety of goods in Classes 16, 25 and 28.

---

[4] J. Clement, *Number of Brawl Stars app downloads worldwide from December 2018 to December 2024*, STATISTA (Jan. 10, 2025), https://www.statista.com/statistics/1358813/global-brawl-stars-downloads/.
[5] Craig Chappie, *Supercell Celebrates Another Unicorn as Brawl Stars Passes $1 Billion*, SENORTOWER (Jan. 2021), https://sensortower.com/blog/brawl-stars-revenue-one-billion.
[6] Tim Bradshaw, *Supercell profits slide again despite mobile gaming boom*, THE FINANCIAL TIMES (Feb. 16, 2021), https://www.ft.com/content/aa0c5b43-e2c5-48ea-9fc3-843ef0d053c0.
[7] J. Clement, *Number of Brawl Stars app downloads worldwide from December 2018 to December 2024*, STATISTA (Jan. 10, 2025), https://www.statista.com/statistics/1358813/global-brawl-stars-downloads/.

9. The Brawl Stars Marks are currently in use in commerce in connection with the Brawl Stars Products.

10. Supercell has spent substantial time, money, and effort building up and developing consumer recognition, awareness and goodwill in its Brawl Star Products and Brawl Stars Marks.

11. Supercell's success is also due to its use of the highest quality materials and processes in making the Brawl Stars Products.

12. Additionally, Supercell owes a substantial amount of the success of the Brawl Stars Game and Brawl Stars Products to its consumers, and word-of-mouth buzz that its consumers have generated.

13. Supercell's efforts, the quality of its Brawl Stars Game and Brawl Stars Products, its marketing, promotion and distribution efforts, and the word-of-mouth buzz generated by its consumers have caused the Brawl Stars Marks to be prominently placed in the minds of the public. Members of the public and retailers have become familiar with Supercell's Brawl Stars Marks, Brawl Stars Game and Brawl Stars Products and have come to associate them exclusively with Supercell.

14. As a result of such associations, the Brawl Stars Marks have acquired a valuable reputation and goodwill among the public.

15. Supercell has gone through great lengths to protect its interests in the Brawl Stars Marks. No one other than Supercell and its Authorized Licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Brawl Stars Marks. Authorized Licensees are not entitled to issue licenses themselves or otherwise outsource the manufacturing of the products bearing the Brawl Stars Marks.

16. Defendants are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying and/or offering for sale Counterfeit Products through Defendants' User Accounts and Merchant Storefronts with Alibaba and/or AliExpress.

17. Defendants are not, nor have they ever been, authorized distributors or licensees of the Brawl Stars Products. Neither Plaintiff, nor any of Plaintiff's authorized agents, have consented to Defendants' use of the Brawl Stars Marks, nor has Plaintiff consented to Defendants' use of marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Brawl Stars Marks.

18. Plaintiff is likely to prevail on its Lanham Act and related common law claims at trial.

19. As a result of Defendants' infringements, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries before Defendants can be heard in opposition, unless Plaintiff's Application for *ex parte* relief is granted:

    a. Defendants have offered for sale and sold substandard Counterfeit Products that infringe the Brawl Stars Marks. For some Defendants, Plaintiff's counsel can input a New York-shipping address in placing orders. For other Defendants, Plaintiff's counsel has confirmed that a customer representative from that particular Defendant confirmed that products can be shipped to a New York-address. Notably, Plaintiff's counsel contends that they have purchased and received at least one product from Defendant Wonderful Fun Store which was shipped to an address in New York. (*See* Futterman Decl.)[8] This product was determined to be counterfeit due to its "inappropriate cellophane packaging," "improper hangtag bearing 'MADE IN CHINA', poor quality materials," less-vibrant coloring, and significantly cheaper

---

[8] "Futterman Decl." refers to the declaration of Plaintiff's counsel Danielle S. Futterman submitted to the Court ex parte by email on March 25, 2025.

price than an authentic Brawl Stars Product. (*Id.* ¶¶ 2–4.) Other products were purchased and are in the process of shipment, but have not been received by Plaintiff's counsel to date.

b. Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for the Brawl Stars Products; and

c. Plaintiff has well-founded fears that if it proceeds on notice to Defendants on this Application, Defendants will: (i) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of or deal with Counterfeit Products or other goods that infringe the Brawl Stars Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (ii) inform their suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products or other goods infringing the Brawl Stars Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (iii) secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from its sales of Counterfeit Products or other goods infringing the Brawl Stars Marks and records relating thereto that are in their possession or under their control and/or (iv) open new User Accounts and Merchant Storefront under new or different names and continue to offer for sale and sell Counterfeit Products with little to no consequence.

20. The balance of potential harm to Defendants of being prevented from continuing to profit

from their illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the Brawl Stars Marks and to its reputations if a temporary restraining order is not issued.

21. Public interest favors issuance of the temporary restraining order in order to protect Plaintiff's interests in and to its Brawl Stars Marks, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as Brawl Stars Products.

22. Plaintiff has not publicized its request for a temporary restraining order in any way.

23. If Defendants are given notice of the Application, they are likely to secret, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of Counterfeit Products or other goods infringing the Brawl Stars Marks. Therefore, good cause exists for granting Plaintiff's request for an asset restraining order.  It typically takes the Financial Institutions a minimum of five (5) days after service of the Order to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts and it is anticipated that it will take the Third Party Service Providers a minimum of five (5) days to freeze Defendants' Merchant Storefronts. As such, the Court allows enough time for Plaintiff to serve the Financial Institutions and Third Party Service Providers with this Order, and for the Financial Institutions and Third Party Service Providers to comply with the Paragraphs I(B)(1) and I(C)(1) of this Order, respectively, before requiring service on Defendants.

24. The next issue is Plaintiff's request for alternative service for the Defendants.  Federal Rule of Civil Procedure 4(f) allows three means of service on a defendant in a foreign country: "(1) by any internationally agreed means of service that is reasonably calculated

to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . .; or (3) by other means not prohibited by international agreement, as the court orders."  "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court."  *Vega v. Hastens Beds, Inc.*, 342 F.R.D. 61, 64 (S.D.N.Y. 2022) (citation omitted).

25. Plaintiff requests alternative service, regardless of whether the Hague Convention applies in this context.

26. The first inquiry is whether the Hague Convention applies at all.  As an initial matter, "China is a signatory to the Hague Convention."  *Pinkfong Co., Inc. v. Avensy Store* ("*Pinkfong I*"), No. 1:23-CV-09238, 2023 WL 8531602, at *1 (S.D.N.Y. Nov. 30, 2023) (citation omitted).  However, "the Hague Convention applies only where the defendant's address is 'known.'"  *See Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen*, No. 23-CV-3960, 2023 WL 3977505, at *5 (S.D.N.Y. June 13, 2023).  An address is "unknown" if a plaintiff demonstrates that it "exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so."  *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018). "Plaintiffs have been found to have exercised reasonable diligence to discover a physical address where the plaintiff [1] researched defendant's websites associated with defendant's domain names, [2] completed multiple Internet-based searches, [3] called known phone numbers, and [4] conducted in-

person visits, where the plaintiff [5] performed extensive investigation and [6] issued subpoenas to the relevant domain registrars and email providers, and where a plaintiff [7] has attempted to obtain the defendant's address in a variety of ways." *Pinkfong I*, 2023 WL 8531602, at *2 (citations omitted and alterations adopted). In short, alternative service may be available if the Hague Convention does not apply because the address is "unknown."

27. If the address is "known," however, then the Hague Convention applies. Even still, Article 15 of the Hague Convention provides that "[n]otwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures." Hague Convention art. 15. In other words, in the event the Hague Convention applies, a party must demonstrate the requisite "urgency" to succeed on a motion for alternative service.

28. I now apply the applicable law to the facts here. Plaintiff first argues that the Hague Convention does not apply because Defendants' addresses are unknown despite reasonable diligence. Plaintiff's counsel proffers its unsuccessful attempts to discover each Defendant's physical address. Plaintiff's counsel searched three Chinese search engines for each company Defendant's registration information and also attempted to find phone numbers associated with those addresses. For the addresses that were found, Plaintiff's counsel mailed test documents to those mailing address to determine the accuracy of those addresses. The breakdown of the addresses of the forty-three (43) Defendants is as follows: (a) One Defendant has a "false or outdated" address and Plaintiff's counsel is unable to locate an accurate address; (b) Ten Defendants "display addresses that appear to be accurate," but Plaintiff's counsel does not have sufficient identifying information to

send test mailings; (c) Ten Defendants "display addresses that appear to be accurate," but Plaintiff's counsel's test mailings were unsuccessful; and (d) Twenty-two Defendants "display addresses that appear to be accurate" and the test mailings were successful. Even so, Plaintiff's counsel argues that they "cannot confirm with any certainty that the addresses it was able to send Test Mailings to" are the accurate addresses for Defendants. I find that only the one Defendant who has a "false or outdated address" has an "unknown address" such that the Hague Convention does not apply. Plaintiff has failed to show that the other forty-two (42) have "unknown" addresses such that the Hague Convention does not apply. *See Pinkfong Co., Inc. v. Avensy Store* ("*Pinkfong II*"), No. 1:23-CV-09238, 2023 WL 8530159, at *3 (S.D.N.Y. Nov. 30, 2023) (allowing alternative service only as to defendants who had "false addresses"); *Telebrands Corp. v. Adward runbaifan, et al.*, Case No. 23-cv-1063, Doc. 18 (S.D.N.Y. Feb. 23, 2023) (permitting alternative service of the temporary restraining order for all defendants because their addresses were "unknown"). Accordingly, Plaintiff's motion for alternative service is GRANTED as to that one Defendant who has a "false or outdated address" because the Hague Convention does not apply as to that one Defendant.

29. Because the addresses of the other forty-two (42) Defendants are "known," the Hague Convention applies. Thus, Plaintiff must demonstrate that the Hague Convention does not prohibit the proffered alternative service by email and online publication. *See Pinkfong I*, 2023 WL 8531602, at *1. To be sure, several courts have found that China has objected to service by email under the Hague Convention. *See Safavieh*, 2023 WL 3977505, at *4. Based on this objection and other considerations, Judge Gregory H. Woods held that service via email on the Chinese defendants in that case was not permitted by the Hague

Convention.  *See Smart Study v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1393 (S.D.N.Y. 2022).

"Many courts in this circuit have since adopted the court's holding in *Smart Study*."

*Safavieh Intl, LLC*, 2023 WL 3977505, at *5 (collecting cases).

30. More recently, however, several courts in this District have allowed alternative service of TRO and preliminary-injunction orders by electronic means as to certain Chinese defendants based on the "urgency" exception under Article 15 of the Hague Convention. For example, shortly after *Smart Study* was decided, Judge Jesse M. Furman exercised his discretion in allowing alternative service by email of TRO and preliminary-injunction orders, but not as to default judgment, under the "urgency" exception. *See Moonbug Entertainment Ltd., et al. v. 012 Stickers Store, et al.*, No. 22-CV-2394, Doc. 43 at 5:18-6:13 (S.D.N.Y. Nov. 14, 2022). More recently, Judge Denise L. Cote similarly interpreted *Smart Study* to be limited to the default-judgment context, without preclusive effect as to "granting interim relief." *ABC v. DEF*, No. 24-CV-8341, 2024 WL 5168624, at *2 (S.D.N.Y. Dec. 13, 2024). In that case, Judge Cote allowed service by email because Plaintiff's counsel had "shown that the exigencies of this case, including the urgent need to address ongoing counterfeiting activity." *Id.* Judge Cote concluded that "service of the TRO and its related Orders may be made by email on all Defendants appearing to reside in China." *Id.* Judge Dale E. Ho cited Judge Cote's opinion in holding the same and granting the requested TRO. *See Intersell Ventures LLC v. 1688 Factory Direct Store Store, et al.*, Case No. 25-CV-408 (DEH), Doc. 18 at 13 (S.D.N.Y. Feb. 11, 2025).

31. Indeed, Judge Woods—who issued *Smart Study* in 2022—has allowed alternative service by electronic means of a TRO based on the "urgency" exception because plaintiffs had demonstrated that "they face irreparable harm from defendants' ongoing infringing

activities." *Spin Master Ltd. et al. v. Aganv*, Case No. 24-CV-4007 (GHW), Doc. 20 at 7 (S.D.N.Y. Sept. 13, 2024).  Judge Woods found that plaintiff's counsel had "many" "unsuccessful" "attempts to serve similar defendants in similar cases in the manner prescribed by the Hague Convention," "and that any attempt to serve [d]efendants in this manner would take longer than six months." *Id.*  Judge Woods held the same in another recent case. *Loewe, S.A. v. Beijing Onward Fashion Co., Ltd. et al.*, Case No. 24-CV-8871 (GHW), Doc. 20 at 4 (S.D.N.Y. Nov. 22, 2024) (same).

32. I agree with the recent line of cases that disagreed with or narrowly interpreted *Smart Study*.  Plaintiff here has demonstrated that it will face irreparable harm from Defendants' continuing trademark infringements.  Plaintiff's counsel, based on their efforts here and experience in other similar cases, have made numerous attempts to serve Defendants here and similar defendants unsuccessfully, demonstrating the "urgency" contemplated by Article 15 of the Hague Convention.  Accordingly, Plaintiff's motion for alternative service is GRANTED as to the remaining forty-two (42) Defendants under the "urgency" exception under Article 15 of the Hague Convention.

33. Similarly, if Defendants are given notice of the Application, they are likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products.  Therefore, Plaintiff has good cause to be granted expedited discovery.

## **ORDER**

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED** as follows:

## I.    <u>Temporary Restraining Order</u>

A.  In my April 2 Order, I granted, among other things, Plaintiff's ex parte request for a Temporary Restraining Order.  For the reasons stated in Plaintiff's April 2, 2025 and April 9, 2025 ex parte letters to the Court, and for good cause shown, it is hereby:

B.  ORDERED that the Temporary Restraining Order found in the April 2 Order is extended by fourteen (14) days until April 30, 2025.  Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days additional days, and for such further period as may be provided by order of the Court:

1)  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products, or any other products bearing the Brawl Stars Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Brawl Stars Marks;

2)  operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order;

3)  directly or indirectly infringing in any manner Plaintiff's Brawl Stars Marks;

4)  using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Brawl Stars Marks to identify any goods or service not authorized by Plaintiff;

5)  using Plaintiff's Brawl Stars Marks and/or any other marks that are confusingly similar to the Brawl Stars Marks on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

6) using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

7) secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

8) effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

9) knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(8) above and I(B)(1) and I(C)(1) below.

C.  IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days additional days until April 30, 2025, and for such further period as may be provided by order of this Court:

   1)  secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court.

D.  IT IS HEREBY ORDERED, as sufficient cause has been shown, that immediately upon receipt of service of this Order, Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements, are restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) additional days until April 30, 2025, and for such further period as may be provided by order of this Court:

   1)  operation of Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts in violation of this Order; and

   2)  instructing, aiding, or abetting Defendants and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs I(A)(1) through I(A)(8), I(B)(1) and I(C)(1) above, including, without limitation, by providing services necessary for Defendants to continue operating Defendants' User Accounts and Merchant Storefronts in violation of this Order.

## II.    Order to Show Cause Why A Preliminary Injunction
## Should Not Issue And Order Of Notice

A. Defendants are hereby ORDERED to show cause before this Court in at a telephonic hearing on **April 30, 2025 at 1:30 p.m.**, why a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), should not issue. The dial-in number is **1-855-244-8681** and the access code is **2309 3085 835**.  There is no attendee ID.

B. IT IS FURTHER ORDERED that opposing papers, if any, shall be filed electronically with the Court and served on Plaintiff's counsel by delivering copies thereof to the office of Epstein Drangel LLP at 60 East 42nd Street, Suite 1250, New York, NY 10165, Attn: Jason M. Drangel on or before April 24, 2025. Plaintiff shall file any Reply papers on or before April 28, 2025.

C. IT IS FURTHER ORDERED that Defendants are hereby given notice that failure to appear at the show cause hearing scheduled in **Paragraph II(A)** above may result in the imposition of a preliminary injunction against them pursuant to Fed. R. Civ. P. 65, which may take effect immediately upon the expiration of this Order, and may extend throughout the length of the litigation under the same terms and conditions set forth in this Order.

## III.    Asset Restraining Order

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. 6201 and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Financial Institutions shall locate and attach Defendants' Financial Accounts and Defendants' Assets and shall provide written confirmation of such attachment to Plaintiff's counsel.

### IV.    Order Authorizing Bifurcated and Alternative Service by Electronic Means

A.  IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 4(f)(3), as sufficient cause has been shown, that service may be made on, and shall be deemed effective as to Defendants if it is completed by the following means:

   1)    delivery of: (i) PDF copies of this Order together with the Summons and Complaint, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download PDF copies of this Order together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking this Order to Defendants' e-mail addresses to be determined after having been identified by Alibaba and/or AliExpress pursuant to **Paragraph V(C)**.

B.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be deemed effective as to Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.

C.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service by electronic means ordered herein shall be made within five (5) days of the Financial Institutions and Third Party Service Providers' compliance with **Paragraphs III(A)** and **V(C)** of this Order.

D.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that the Clerk of the Court shall issue a single original summons directed to all Defendants as listed in an attachment to the summons that will apply to all Defendants.

E.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that service may be made and shall be deemed effective as to the following if it is completed by the below means:

    1)    delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

    2)    delivery of: (i) a PDF copy of this Order, or (iii) a link to a secure website where Alipay will be able to download a PDF copy of this Order via electronic mail to US_IPR_TRO_Requests@alipay.com;

    3)    delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Alibaba and AliExpress will be able to download a PDF copy of this Order via electronic mail to IPR_USTRO@service.alibaba.com and IPR-USTRO@aliexpress.com;

    4)    delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to Payoneer Inc.'s Customer Service Management at customerservicemanager@payoneer.com and subpoenas@payoneer.com; and

    5)    delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to legal-int@pingpongx.com.

### V.    Order Authorizing Expedited Discovery

A.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

    1)    Within fourteen (14) days after receiving service of this Order, each Defendant shall serve upon Plaintiff's counsel a written report under oath providing:

        a.   their true name and physical address;

b.  the name and location and URL of any and all websites that Defendants own and/or operate and the name, location, account numbers and URL for any and all User Accounts and Merchant Storefronts on any Third Party Service Provider platform that Defendants own and/or operate;

c.  the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

d.  the account details for any and all of Defendants' Financial Accounts, including, but not limited to, the account numbers and current account balances; and

e.  the steps taken by each Defendant, or other person served to comply with **Section I**, above.

2)  Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

3)  Plaintiff may serve requests for the production of documents pursuant to Fed. R. Civ. P. 26 and 34, and Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

B.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order the Financial Institutions served with this Order shall identify any and all of Defendants' Financial Accounts, and provide Plaintiff's counsel with a summary

report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendants, including contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendants' Financial Accounts and confirmation of said compliance with this Order.

C.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall identify any and all of Defendants' User Accounts and Merchant Storefronts, and provide Plaintiff's counsel with a summary report containing account details for any and all User Accounts and Merchant Storefronts, which shall include, at a minimum, identifying information for Defendants and Defendants' User Accounts and Defendants' Merchant Storefronts, contact information for Defendants (including, but not limited to, mailing addresses and e-mail addresses) and confirmation of said compliance with this Order.

D.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1)  Within fourteen (14) days of receiving actual notice of this Order, all Financial Institutions who are served with this Order shall provide Plaintiff's counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to any and all of Defendants' Financial Accounts, including, but not limited to, documents and records relating to:

a.  account numbers;

b.  current account balances;

c.  any and all identifying information for Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;

d.  any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents and if a business entity, any and all business documents provided for the opening of each and every of Defendants' Financial Accounts;

e.  any and all deposits and withdrawals during the previous year from each and every one of Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

f.  any and all wire transfers into each and every one of Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

E.  IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1)  Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers served with this Order shall provide to Plaintiff's counsel all documents and records in its possession, custody or control (whether located in the U.S. or abroad) relating to Defendants' User Accounts and Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

a.  any and all User Accounts and Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and account numbers

for any and all User Accounts and Defendants' Merchant Storefronts that Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C);

b. the identities, location and contact information, including any and all e-mail addresses of Defendants that were not previously provided pursuant to Paragraph V(C);

c. the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' User Accounts and Defendants' Merchant Storefronts, a full accounting of Defendants' sales history and listing history under such accounts and Defendants' Financial Accounts with any and all Financial Institutions associated with Defendants' User Accounts and Defendants' Merchant Storefronts; and

d. Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Counterfeit Products, or any other products bearing the Brawl Stars Marks and/or marks that are confusingly similar to, identical to and constitute an infringement of the Brawl Stars Marks.

## VI.    Security Bond

A. IT IS FURTHER ORDERED that Plaintiff shall place security in the amount of five-thousand Dollars ($5,000) with the Court which amount is determined adequate for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.

## VII.    <u>Sealing Order</u>

A.  IT IS FURTHER ORDERED that Plaintiff's Complaint and exhibits attached thereto, and

Plaintiff's *ex parte* Application and the Declarations of Markku Ignatius and Gabriela N.

Nastasi in support thereof and exhibits attached thereto, and this Order shall remain sealed

until the Financial Institutions and Third Party Service Providers comply with **Paragraphs**

**I(B)-(C), III(A) and V(C)** of this Order.

B.  IT IS FURTHER ORDERED that Plaintiff's counsel submit a letter notifying me why this case

should remain under seal, given the presumption of access and the public's First Amendment

right to access judicial documents.  *See generally Lugosch v. Pyramid Co. of Onondaga*, 435

F.3d 110 (2d Cir. 2006).  Such a letter shall be filed within 14 days after Defendants are served

with (1) the Complaint and exhibits attached thereto, (2) Plaintiff's ex parte Application and

accompanying Declarations and exhibits attached thereto, and (3) this Order.


     This Amended Temporary Restraining Order without notice is entered April 14, 2025 and

shall remain in effect until April 30, 2025.


SO ORDERED.

Dated:  April 14, 2025
        New York, New York

_____
Vernon S. Broderick
United States District Judge